Raymond J. **PATRIARCA**

v.

**FEDERAL BUREAU OF INVESTIGATION and William Webster, Director and United States Department of Justice and Edwin Meese, Attorney General and the Providence Journal Company.**

**Civ. A. No. 85–0707B.**

United States District Court,
D. Rhode Island.

July 16, 1986.

John F. Cicilline, Providence, R.I., for plaintiff.

Joseph Cavanagh, Edward Hindle, Knight Edwards, Matthew Medeiros, Edwards & Angell, Providence, R.I., for defendant Journal.

Mona S. Butler, Vincent M. Garvey, Dept. of Justice, Washington, D.C., Everett Sammartino, Asst. U.S. Atty., Providence, R.I., for defendant FBI.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

The Government Defendants (Department of Justice, Edwin Meese, Attorney General, Federal Bureau of Investigation, William Webster, Director) have moved to dismiss this action for lack of subject mat-

ter jurisdiction and for failure to state a claim upon which relief may be granted. The original complaint was filed November 8, 1985. The Government Defendants and the Defendant Providence Journal Company (Journal) each filed a motion to dismiss. Plaintiff's motion to amend his complaint was granted. Thereafter the Journal filed an answer and the Government Defendants filed a motion to dismiss. It is the Government's motion to dismiss which is addressed in this opinion.

This controversy has a history. Between the years 1962 and 1965, the FBI maintained an electronic device called a "bug" which recorded conversations within the premises located at 168 Atwells Avenue, in the City of Providence. The property was occupied by Raymond L.S. Patriarca, who police officials claimed was the head of Organized Crime in south-eastern New England. The bug was placed without benefit of a warrant of any kind. It was placed in violation of the Fourth Amendment prohibition of unlawful searches and seizures. The information that was obtained through the use of the bug was obtained by the Government in violation of the Fourth Amendment to the United States Constitution.

The Defendant Providence Journal Company is the publisher of newspapers of wide circulation in the State of Rhode Island. It sought disclosure of the tapes from the Department of Justice. The initial request, made November 1, 1976, was refused on the basis that the disclosure of investigatory files compiled for law enforcement purposes would be "an unwarranted invasion of privacy" under the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C). The Journal brought suit in this district to compel disclosure of logs and memoranda made by agents from the tapes which had by that time been erased.

*Providence Journal Co. v. F.B.I.*, 460 F.Supp. 762 (D.R.I.1978), *rev'd*, 602 F.2d 1010 (1st Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

Raymond L.S. Patriarca (Plaintiff's father) was allowed to intervene because of the personal nature of his privacy interest which he sought to protect. *Providence Journal*, 460 F.Supp. at 766. The court stated that " ... Mr. Patriarca has a colorable claim arising directly under the Fourth Amendment for injunctive relief to protect his right to be free of unreasonable searches and seizures and governmental impropriety with regard to those seizures." 460 F.Supp. at 767. In a decision several months later, the court barred disclosure of information relating to family relationship, family matters and their private lives. 460 F.Supp. at 789. Raymond L.S. Patriarca died in July of 1984. His son, Raymond J. Patriarca, is the Plaintiff in the present action and asserts similar Fourth Amendment claims.

The seeds of the present controversy were sown on September 26, 1984 when the Journal again requested from the FBI copies or access to transcripts, summaries or tapes of the 1962–1965 illegal electronic surveillance of Raymond L.S. Patriarca's business office. In its request, the Journal notified the FBI that Raymond L.S. Patriarca had died in July of 1984, but it made no reference whatsoever to the earlier litigation involving the FBI in which the Journal had been denied the information. In early 1985, the FBI notified the Journal that its request under the Freedom of Information Act had been accepted. The materials became available to the Journal in June, 1985.[1] Some of the information concerning Raymond J. Patriarca was published by the Journal.

---

1. In the initial stages of this litigation Plaintiff sought and was granted a Temporary Restraining Order against all Defendants. Defendant Journal violated that Order by publishing information concerning Raymond J. Patriarca and has since been found in criminal contempt by the Court. *In The Matter of Application To Adjudge The Providence Journal Company And Its Executive Editor, Charles M. Hauser, In Criminal Contempt,* 630 F.Supp. 993 (D.R.I.1986). The Temporary Restraining Order was lifted against the Journal within several days. A preliminary injunction was granted against the Federal Government Defendants regarding the release of any further information and that injunction is still in effect.

In connection with their motion, the Federal Defendants have filed a document called a "Declaration." The Declaration is an affidavit by FBI Special Agent, Frank C. Underwood, III, who is Unit Chief in Disclosure Unit I, of the Freedom of Information—Privacy Acts Section of the Records Management Division at FBI Headquarters in Washington, D.C. In this affidavit, Special Agent Underwood specifically states that in accord with the Court's issuance of a preliminary injunction and the First Circuit's earlier decision, *Providence Journal v. F.B.I.*, 602 F.2d 1010 (1979), since November 14, 1985 no further information regarding the illegal surveillance relative to, by or about Raymond J. Patriarca has been disclosed by Disclosure Unit I. Importantly, Special Agent Underwood states that the Records Management Division has determined that exemption 7(C) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure requests for surveillance information that are statements to, by or about Raymond J. Patriarca, not heretofore released.

In essence, the FBI has admitted that because of Exemption 7(C), the released information which sparked this controversy should not have been released. Defendant Journal obtained information to which it was not entitled because of, at the least, a mistake by the FBI. Clearly the Defendant Journal was on notice that the disclosure was a change of position and possibly an error by the FBI. The Journal was the Plaintiff in the earlier litigation and must be charged with notice of the First Circuit's opinion. This earlier decision dealt with, among other matters, Raymond L.S. Patriarca's private life and the private lives of family members, including Plaintiff Raymond J. Patriarca, regarding such matters as health, personal and religious beliefs and the like. The language of the Court of Appeals was clear and unambiguous in its denial of disclosure. The Court of Appeals had ruled that the information was exempted from disclosure under Exemption 7C, "solely on the ground that the *manner in which the information was obtained for-*

*bids release ..." Providence Journal v. F.B.I., supra,* at 1014. (emphasis added).

In his Amended Complaint, Plaintiff seeks declaratory, injunctive and damages relief under the Fourth Amendment to the United States Constitution and under three federal statutes. Plaintiff seeks relief under the Freedom of Information Act, 5 U.S.C. § 552, which allows public access to certain government documents and information. Under this disclosure statute, there are specific exemptions including the privacy exemption which allow the government to withhold certain types of information. In addition, relief is sought under the Privacy Act. The Privacy Act, 5 U.S.C. § 552a, limits the information which a government agency may disclose from its records regarding an individual. The Privacy Act requires that strict records be maintained and has specific procedural requirements regarding the obtaining and release of any Government information. Plaintiff also seeks relief under Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510–2520. The Congress passed Title III in order to strictly limit and control the use of electronic surveillance to protect the privacy interest of citizens and to provide a process for legitimate electronic surveillance.

The Government Defendants have moved to dismiss the action for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1). Plaintiff has asserted federal question jurisdiction under 28 U.S.C. § 1331 for Counts 2, 3, and 4 of his Amended Complaint. Plaintiff also claims jurisdiction under the Privacy Act and specifically under 5 U.S.C. § 552a(g)(1) which states that:

> Whenever any agency ... fails to comply with any provision of this section ... in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matter under the provisions of this subsection.

Plaintiff claims jurisdiction under Title III, 18 U.S.C. § 2520 as well. This section of the statute which regulates electronic surveillance states:

§ 2520. Recovery of civil damages authorized

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred....

This section of the statute authorizes a damage suit, but does not specifically confer federal jurisdiction. Federal question jurisdiction is however supported under 28 U.S.C. § 1331 which has been alleged in the Amended Complaint. Finally, Plaintiff claims damages under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violation of his Fourth Amendment rights, a claim for which jurisdictional basis is found in 28 U.S.C. § 1331(a).

 When reviewing a jurisdictional question based on a federal question, the non-moving party must show that he has alleged a claim under federal law and that the claim is not frivolous. *Baker v. Carr*, 369 U.S. 186, 199, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962); *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). In this action, Plaintiff has met this burden. Considering the fact that Plaintiff's claims involve alleged violations of federal statutes and the Fourth Amendment, and although there are substantial questions concerning the applicability of the statutes to this action, there are non-frivolous federal questions presented. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

In addition, Defendants have moved to dismiss for failure to state a claim on which relief may be granted. In considering this motion all the facts and inferences must be viewed in the light most favorable to Plaintiff. *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976). A complaint will be dismissed only if it appears beyond doubt from the pleadings that the party opposing the motion can prove no set of facts which would support a claim for relief. *Id.; O'Brien v. Moriarty*, 489 F.2d 941, 943 n. 3 (1st Cir.1974). It must be assumed that Plaintiff's allegations in the complaint are true. *Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 173–74, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965).

 The complaint should not be dismissed merely because Plaintiff's allegations do not support the legal theory Plaintiff intends to proceed on, since the Court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357, at 602 n. 76 (1969).

It is appropriate to refer at this point to the pleading philosophy of the Federal Rules of Civil Procedure. Rule 8(a) of the Federal Rules of Civil Procedure imposes only three requirements for a complaint: (1) a short and plain statement of the jurisdictional grounds, (2) a short and plain statement of the claim showing the pleader is entitled to relief, and, (3) a demand for judgment, which may be in the alternative.

Rule 8(e)(1) provides, "Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required."

Rule 8(e)(2), in part, provides, "A party may set forth two or more statements of a claim ... alternatively or hypothetically, either in one count ... or in separate counts...."

Rule 10(b) of the Federal Rules of Civil Procedure provides in part, "Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth."

The hope of course was that the technical inflexible principles of common law pleading would give way to a more relaxed and sensible system. *Bottomly v. Passamaquoddy Tribe*, 599 F.2d 1061, 1063 (1st Cir.1979).

Although a model of relative simplicity, the Amended Complaint in this action still contains four counts; the first count incorporates and realleges the original complaint which consisted of six pages, 26 paragraphs and four numbered prayers for relief; Count two is "brought pursuant to the Privacy Act"; Count three is brought pursuant to Title III, and Count four is brought pursuant to the Fourth Amendment to the United States Constitution. There are, in total 4 counts in 45 paragraphs and 8 numbered prayers for relief. The complaint is based on only one transaction or occurrence, and the only distinction among the various counts is the legal theory upon which the claim is based.

■ In a complaint, it is not only unnecessary to spell out each legal theory to be relied on, it is also unnecessary to separate each distinct legal theory into a separate count. *O'Donnell v. Elgin, J. & E.R. Co.*, 338 U.S. 384, 392 n. 6, 70 S.Ct. 200, 205 n. 6, 94 L.Ed. 187 (1949); *Wagner v. World Wide Auto. Corp.*, 201 F.Supp. 22, 24 (W.D.N.Y.1961); *United States v. American Linen Supply Co.*, 141 F.Supp. 105, 117 (N.D.Ill.1956); *United States v. Henke Const. Co.*, 68 F.Supp. 3, 4 (W.D.Mo.1946); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1325 (relationship of Rule 8(e)(2) and Rule 10(b)); 2A Moore's Federal Practice § 10.03. The experience of the past dies slowly and this vestige of common law pleading of a separate claim in a separate count to avoid undesirable duplicity is still alive and well—under different guise.

■ For purposes of a motion to dismiss the amended complaint will be considered as a whole and each count will not be considered seriatim. Thus, if there is a claim stated, the Court need proceed no further, for such a further endeavor could result in determination of legal issues which may never arise. It is only if the complaint states no claim at all that the complaint may be dismissed as is expressly provided in Fed.R.Civ.P. 12(b)(6).

■ Applying these standards, Plaintiff may obtain relief against the Government Defendants. The remedy which Plaintiff seeks is foursquare within the Supreme Court's opinion in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A citizen has a right of action under the Fourth Amendment for violations of that Amendment by government officials. Plaintiff has a direct action conferred by the Fourth Amendment. This remedy is available whether or not there is an equally available effective statutory remedy. *Carlson v. Green*, 446 U.S. 14, 18–23, 100 S.Ct. 1468, 1471–74, 64 L.Ed.2d 15 (1980).

■ The Government argues that the constitutional violation, if any, occurred between 1962 and 1965, in the initial intrusion and recording. However, as the Court of Appeals for the First Circuit pointed out disclosure of illegally obtained information is a separate wrong. *Providence Journal Company v. F.B.I.*, 602 F.2d 1010, 1013–14 (1st Cir.1979). Thus, for example, the continuing existence of unlawful arrest records are subject to a claim brought under the Fourth Amendment. *Sullivan v. Murphy*, 478 F.2d 938, 966–973 (D.C.Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *see also Halperin v. Kissinger*, 606 F.2d 1192, 1207–08 (D.C.Cir. 1979); *Tarlton v. Saxbe*, 507 F.2d 1116, 1122 (D.C.Cir.1974). Defendants' contention would permit the Government the unhindered ability to disclose illegally collected information everywhere but in a court-

room. Certainly the Fourth Amendment is not so ineffective.

It is therefore unnecessary to seek to enter now the thicket of legal issues posed by the several federal statutes which Plaintiff seeks to implicate in this action. If necessary, those issues can be more adequately addressed on the basis of a full evidentiary record.

■ The Government Defendants seek to dismiss Plaintiff's claim for injunctive relief. They correctly assert that under the FOIA, as interpreted in the Supreme Court opinion in *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the Court cannot grant an injunction. The Defendants also claim that Congress provided no injunctive relief under the Privacy Act or Title III. At present it is unnecessary to determine this issue because an injunction is already in effect based on the Government's alleged violation of Plaintiff's Fourth Amendment rights.

The Federal Defendants now assert that the claim for injunctive relief is moot. Since the initiation of this litigation, the FBI and the Department of Justice have for a second time reversed their position regarding pending FOIA requests for the information in light of *Providence Journal v. F.B.I., supra*. To the extent that logs, airtels or reports relate to statements to, by or about Raymond J. Patriarca, not heretofore disclosed, they have determined that such materials are exempt from disclosure pursuant to exemption 7(C) of the FOIA (5 U.S.C. § 552(b)(7)(C)). The Court has been advised of this position after oral argument of the Government's motion to dismiss. The Declaration of FBI Special Agent Underwood affirms the Government's position that it will release no further materials regarding Plaintiff. The appropriate process, however, is not a motion to dismiss but a motion to modify or vacate the injunction under Fed.R.Civ.P. 60(b). 11 Wright & Miller, Federal Practice and Procedure § 2961 (1973); *see United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562

(1968); *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *Pan American Computer Corp. v. Data General Corp.*, 652 F.2d 215, 217 (1st Cir.1981). The Court must be satisfied, after hearing, that the Government will not again change its position. Therefore, it would be inappropriate to grant the requested relief by way of this motion to dismiss.

Defendants' motion to dismiss is therefore denied.